VINH ALKIRE-CLEMEN, Claimant-Appellee,
v.
CASTLE MEDICAL CENTER, Employer-Appellant, Self-Insured, and
CRAWFORD AND COMPANY, Insurance Adjuster-Appellant (CASE NO. AB 2002-309 (X-XX-XXXXX)) AND
VINH ALKIRE-CLEMEN, Claimant-Appellee,
v.
CASTLE MEDICAL CENTER, Employer-Appellant, Self-Insured, and
CRAWFORD AND COMPANY, Insurance Adjuster-Appellant (CASE NO. AB 2003-121 (X-XX-XXXXX)).
Nos. 28764, 28765
Intermediate Court of Appeals of Hawaii.
January 28, 2010.
On the briefs:
Wayne W.H. Wong, for Employer-Appellant, Self-Insured, and Insurance Adjuster-Appellant.
Vinh Alkire-Clemen, Pro Se Claimant-Appellee.

SUMMARY DISPOSITION ORDER
NAKAMURA, C.J., FOLEY and LEONARD, JJ.
In these workers' compensation cases, we consolidated Appeal Nos. 28764 and 28765 for purposes of disposition on appeal because they involve the same parties and overlapping underlying facts. Employer-Appellant Castle Medical Center (Castle) and Insurance Adjustor-Appellant Crawford and Company (collectively, the "Employer") appeal from two Decisions and Orders of the Labor and Industrial Relations Appeals Board (LIRAB), which were both entered on August 28, 2007.
Claimant-Appellee Vihn Alkire-Clemen (Claimant) was employed by Castle as a registered nurse. In LIRAB Case No. AB 2002-309, the case underlying Appeal No. 28764, the LIRAB determined that Claimant sustained injuries to her low back and left knee and developed a psychological condition in the nature of chronic pain disorder and depression as a result of a February 24, 1998, work injury. In LIRAB Case No. AB 2003-121, the case underlying Appeal No. 28765, the LIRAB determined that Claimant sustained a cervical strain/sprain which developed into a psychological condition in the form of a pain disorder and depression as the result of a February 20, 1999, work injury. For purposes of trial, the LIRAB heard both cases simultaneously but issued two separate decisions because the cases had not been consolidated.

I.
On February 24, 1998, Claimant injured her back after trying to prevent a patient from crawling over his bed rails and lifting the patient back onto the bed. Claimant began treatment with Dr. Neil Katz, an orthopedic surgeon, on October 1, 1998, and filed a workers' compensation claim on October 5, 1998. Claimant reported back pain and left thigh numbness and was diagnosed as having low back pain and possible radiculopathy.
On February 20, 1999, Claimant was allegedly injured as the result of an altercation with a male co-worker at work.[1] In March 1999, shortly after this incident, Claimant stopped working for Castle.
With respect to the February 20, 1999, incident, Claimant claimed that the co-worker tried to attack her and that as she pulled open a heavy door in an attempt to escape from the co-worker, he pulled her hair. On August 22, 2002, Claimant filed a claim for workers' compensation benefits arising out of the February 20, 1999, work incident. Claimant stated that this incident caused her to suffer from "neck pain, constant headache, pain in back[,] extremities tingling[,] pain and numbness[.]"
In the meantime, Dr. Ronald Barozzi, Ph.D., Psy.D., diagnosed Claimant with major depressive disorder, recurrent, severe; pain disorder with psychological factors; Post Traumatic Stress Disorder (from childhood war trauma in Vietnam); and diffuse pain syndrome with probable muscular origin. Psychiatrist Mark Bernstein, M.D., diagnosed Claimant as suffering from depression not otherwise specified. Psychiatrist Mohan Nair, M.D., who examined Claimant at Employer's request on January 18, 2002, diagnosed Claimant as having a non-disabling pain disorder, chronic type, and conversion disorder. Dr. Nair also opined that Claimant may have had an adjustment disorder with depressed and anxious mood as a result of the February 24, 1998, injury that would have resolved by February 2000. Psychiatrist Dr. Joel Peck, M.D., diagnosed Claimant with chronic major depression with psychosis/severe.
On July 10, 2002, Claimant sought treatment with Dr. Edward Okimoto and reported that she experienced weakness in her legs which caused her to fall. Claimant also reported to other treating physicians that she fell because of numbness in her leg and that she twisted and fell on her left knee. An MRI scan of Claimant's left knee on August 28, 2002, revealed probable ligament tears and a suspected medial meniscus tear. Dr. Katz reviewed the MRI on September 10, 2002, and diagnosed left knee pain with MCL (medial collateral ligament) grade II sprain; ACL (anterior cruciate ligament) grade II sprain; and a medial meniscus tear.

II.
In Appeal No. 28764, Employer argues that the LIRAB erred in concluding that: 1) Claimant was entitled to medical care after February 28, 2000, for a psychological condition in the nature of a chronic pain disorder and depression secondary to her February 24, 1998, work injury; 2) Employer was liable for services rendered by Dr. Bernstein on December 10, 2001, provided that Claimant and her physicians complied with the Hawaii Workers Compensation Medical Fee Schedule (fee schedule); 3) Employer was liable for any continued psychiatric treatment by Dr. Bernstein; 4) Claimant was entitled to further massage, acupuncture, and acupressure treatments, provided she complied with the fee schedule; 5) Claimant was entitled to a change of physician to Dr. McCaffrey; 6) future vocational rehabilitation services were to be kept open to Claimant; 7) Claimant sustained a left knee sprain and medial meniscus tear on July 10, 2002, as a compensable consequence of her February 24, 1998, work injury; and 8) Claimant was entitled to Temporary Total Disability (TTD) benefits after December 31, 2003, subject to proper medical certification and excluding periods of disability attributable to her December 2003 personal elective surgeries.
In Appeal No. 28765, Employer argues that the LIRAB erred in concluding that: 1) Claimant's claim filed on August 22, 2002, with respect to the February 20, 1999, work incident was not time-barred pursuant to Hawaii Revised Statutes (HRS) §§ 386-82 (1993); 2) Claimant sustained a compensable cervical strain/sprain; and 3) Claimant's alleged February 20, 1999, injury had developed into a psychological condition in the form of a pain disorder with psychological factors and a diffuse muscular pain syndrome and depression.
For the reasons discussed below, in Appeal No. 28764, we affirm in part and reverse in part the LIRAB's Decision and Order in Case No. AB 2002-309. In appeal No. 28765, we vacate in part the LIRAB's Decision and Order in Case No. AB 2003-121, and we remand the case for further proceedings consistent with this Summary Disposition Order.

III.
We review the LIRAB's findings of fact under the clearly erroneous standard and its conclusions of law de novo. Nakamura v. State, 98 Hawai`i 263, 267, 47 P.3d 730, 734 (2002). We give deference to the LIRAB's assessment of the credibility of witnesses and the weight given to the evidence.
It is well established that courts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field.
Id. at 268, 47 P.3d at 735 (block quote format changed) (quotingIgawa v. Koa House Restaurant, 97 Hawai`i 402, 409-10, 38 P.3d 570, 577-78 (2001)). HRS §§ 386-85(1) (1993) establishes a presumption that an employee's claim for workers' compensation is for a covered work injury. The employer bears the ultimate burden of persuasion, and the claimant is given the benefit of the doubt, on the work-relatedness issue. Id.

IV.
We resolve the claims raised by Employer in Appeal No. 28764 as follows:

A.
We reject Employer's claim that the LIRAB erred in concluding that Claimant was entitled to medical care after February 28, 2000, for a psychological condition in the nature of a chronic pain disorder and depression. Employer asserts that the LIRAB's conclusion is invalid because it exceeded the scope of the issues set forth in the LIRAB's pretrial order. Employer contends that the relevant issue as stated in the pretrial order was "Whether Claimant is entitled to medical care for the adjustment disorder after February 29, 2000[.]" Employer argues that it did not have a fair opportunity to be heard on whether Claimant's adjustment disorder had evolved into a chronic pain disorder and depression as found by the LIRAB. We disagree with Employer's argument.
Claimant's appeal to the LIRAB clearly encompassed the question of whether Claimant's psychological condition was a covered injury attributable to her February 24, 1998, work injury. Through Claimant's medical reports, Employer was aware that Claimant's psychological condition had not only been diagnosed as an adjustment disorder, but also as a chronic pain disorder and depression. Moreover, one of the issues before the LIRAB was "Whether Employer is liable for Dr. Mark Bernstein's continued psychiatric treatment." Thus, we conclude that Employer had fair notice that its liability for Claimant's psychological condition was in issue and that Employer had a fair opportunity to litigate that issue and to dispute that Claimant suffered from the psychological condition found by the LIRAB.
There was substantial evidence to support the LIRAB's determination that Claimant suffered from a psychological condition in the nature of a chronic pain disorder and depression that was attributable to the February 24, 1998, work injury. We conclude that the LIRAB did not err in concluding that Claimant was entitled to medical care after February 28, 2000, for this psychological condition.

B.
Employer claims that the LIRAB erred in concluding that Employer was liable for services rendered by Dr. Bernstein on December 10, 2001. We agree with Employer on this claim. The record shows that Claimant went to Dr. Bernstein for an evaluation without obtaining the required prior approval for the visit and despite her agreement to wait for an independent psychiatric evaluation being arranged by Employer, which she subsequently attended. We hold that Employer is not liable for the services rendered by Dr. Bernstein on December 10, 2001.

C.
We reject Employer's claim that the LIRAB erred in concluding that Employer was liable for continued psychiatric treatment, if any, rendered by Dr. Bernstein. The record shows that Claimant was referred by her attending physician, Dr. Vern Sasaki, to Dr. Bernstein at the recommendation of Dr. Barozzi. Other doctors also opined that Claimant was suffering from psychiatric or psychological problems. There was substantial evidence in the record that Claimant suffered from a work-related psychological condition and that she was entitled to seek continued treatment for such condition by Dr. Bernstein.

D.
We reject Employer's claim that the LIRAB erred in concluding that Claimant was entitled to further massage, acupuncture, and acupressure treatments, provided she complied with the fee schedule. The focus of Employer's argument was on Claimant's request for further massage treatments, which Employer claimed were not reasonably necessary. We note that HRS §§ 386-1 (Supp. 2009) defines "medical care" and "medical services" to mean "every type of care, treatment, . . . [and] service . . . as the nature of the work injury requires," including services provided by a licensed massage therapist.[2] There was substantial evidence in the record to support the findings on which the LIRAB's conclusion was based.
We reject Employer's claim that the LIRAB erred in concluding that Claimant was entitled to a change of physician to Dr. McCaffrey. In 2002, Dr. Sasaki, who was Claimant's attending physician, informed Claimant that there was very little curative treatment he could offer her; that her care would best be handled by a pain management specialist; and that he would be happy to accommodate Claimant's desire to transfer to Dr. McCaffrey, an occupational medicine specialist, as her primary care physician. In subsequent letters, Dr. Sasaki indicated that it would be in Claimant's best interest to transfer to another doctor; that he could not serve as her primary physician because Straub Hospital had closed its occupational medicine department; that he had exhausted all treatment options; and that she should continue to see Dr. McCaffrey, as she seemed to be improving. The LIRAB's decision to permit Claimant to change to Dr. McCaffrey as her attending physician is supported by the record.

F.
We reject Employer's claim that the LIRAB erred in its decision to keep future vocational rehabilitation services open to Claimant. HRS §§ 386-25(a) (Supp. 2009) provides that
[t]he purposes of vocational rehabilitation are to restore an injured worker's earnings capacity as nearly as possible to that level that the worker was earning at the time of injury and to return the injured worker to suitable gainful employment in the active labor force as quickly as possible in a cost-effective manner.
There was substantial evidence to support the LIRAB's finding that "further [vocational rehabilitation] services may be productive in identifying suitable gainful employment for Claimant." The LIRAB had reasonable grounds for its decision not to close vocational rehabilitation services to Claimant.

G.
We reject Employer's claim that the LIRAB erred in concluding that Claimant sustained a left knee sprain and medial meniscus tear on July 10, 2002, as a compensable consequence of her February 24, 1998, work injury. There was conflicting medical evidence presented on whether Claimant's left knee condition was a compensable consequence of the February 24, 1998, injury. The LIRAB chose to credit the evidence that supported the conclusion that Claimant's left knee sprain and medial meniscus tear were attributable to her February 24, 1998, work injury. As a general rule, we give deference to the LIRAB's assessment of the credibility of witnesses and the weight given to the evidence. See Nakamura, 98 Hawai`i at 268, 270-71, 47 P.3d at 735, 737-38. The LIRAB also apparently relied upon the presumption of compensability set forth in HRS §§ 386-85(1) in rendering its decision on this issue. We find no basis to overturn the LIRAB's decision.

H.
We reject Employer's claim that the LIRAB erred in concluding that Claimant was entitled to TTD benefits after December 31, 2003, subject to proper medical certification and excluding periods of disability attributable to her December 2003 personal elective surgeries. We conclude that the LIRAB's conclusion was supported by evidence in the record and by the applicable law.

V.

A.
The threshold inquiry in Appeal No. 28765 is whether the LIRAB erred in concluding that the workers' compensation claim filed by Claimant on August 22, 2002, for injuries arising out of the February 20, 1999, work incident was not barred by the statute of limitations set forth in HRS §§ 386-82. The LIRAB concluded as follows:
The [LIRAB] concludes that Claimant's claim filed on August 22, 2002 is not time-barred pursuant to HRS §§ 386-82 because there is substantial evidence in the record that she was asserting a claim for an injury based on the February 20, 1999 incident at work starting from September 1, 1999, when she was seen by Dr. Kelley and through November, 2000, when Dr. Yamada raised the question of why there was one workers' compensation case instead of two. Claimant may have been dissuaded from filing a separate claim by Employer's adjuster handling the case, but even if she was not, the [LIRAB] concludes that there is sufficient evidence based on the mechanism of injury and the medical treatment sought prior to August 22, 2002 indicating that her claim is not time-barred.
The LIRAB ruled that Claimant's claim was not time-barred because information contained in Claimant's medical records, which provided notice to Employer of injuries Claimant sustained in the February 20, 1999, work incident, was sufficient to constitute a claim for workers' compensation benefits. For the reasons stated below, we hold that the LIRAB's conclusion that notice to Employer of Claimant's injuries through her medical records was sufficient to constitute a claim for workers' compensation benefits was wrong. Because this was the only ground the LIRAB cited in support of its ruling that Claimant's claim for injuries arising out of the February 20, 1999, incident was not time-barred, we vacate the LIRAB's ruling on that issue. We do not reach the merits of the other claims raised by Employer in Appeal No. 28765.

B.
Under the Hawai`i Workers Compensation Law, an injured employee who wants to receive compensation is required to: 1) notify the employer of any injury as soon as practicable, HRS §§ 386-81 (1993);[3] and 2) make a written claim to the Director of the Department of Labor and Industrial Relations (Director) within two years after the effects of the injury have become manifest and within five years of the accident or occurrence causing the injury. HRS 386-82 (1993). In its decision, the LIRAB referred to Claimant's discussions with Dr. Charles Kelley and Dr. Seiji Yamada, which are reflected in medical records prepared by the doctors, regarding the injuries she sustained as a result of the February 20, 1999, work incident. Although Employer does not dispute receiving the medical records reflecting these discussions with Drs. Kelley and Yamada, such records, at most, served to provide evidence that Claimant satisfied the first requirement of notifying her employer of the alleged injuries arising out of the February 20, 1999, work incident.
However, the medical records prepared by Drs. Kelley and Yamada did not satisfy the second requirement, set forth in HRS §§ 386-82, that Claimant make a written claim to the Director within two years after the effects of the injuries arising out of the February 20, 1999, incident became manifest. While the medical records may have put Employer on notice of a possible claim, Claimant did not satisfy the HRS §§ 386-82 requirement that she make a written claim to the Director. Accordingly, the LIRAB erred in concluding that Claimant's claim was not time-barred on the ground that Employer had received notice of Claimant's injury.
The LIRAB did not make specific findings on when the effects of the injuries Claimant alleged from the February 20, 1999, incident had became manifest. The LIRAB stated that "Claimant may have been dissuaded from filing a separate claim [regarding the February 20, 1999, work incident] by Employer's adjuster." However, the LIRAB did not resolve whether Claimant had in fact been dissuaded from filing a claim by Employer's adjuster or address whether such conduct, if proven, would affect the LIRAB's statute-of-limitations analysis.
We hold that the LIRAB erred in concluding that Claimant's claim regarding the injuries arising out of the February 20, 1999, work incident were not time-barred because Employer had notice of her injuries. Accordingly, we vacate that portion of the LIRAB's decision. On remand, the LIRAB may consider whether there are other reasons why Claimant's claim is not barred by the statute of limitations. Because we vacate the LIRAB's statute-of-limitations ruling, we do not reach the merits of the other claims raised by Employer in Appeal No. 28765.

VI.
For the foregoing reasons, in Appeal No. 28764, we reverse the portion of the LIRAB's August 28, 2007, Decision and Order in Case No. AB 2002-309 that concluded that Employer was liable for services rendered by Dr. Bernstein on December 10, 2001, and we affirm that Decision and Order in all other respects. In Appeal No. 28765, we vacate the portion of the LIRAB's August 28, 2007, Decision and Order in Case No. AB 2003-121 that concluded that Claimant's claim filed on August 22, 2002, was not time-barred pursuant to HRS §§ 386-82 because Employer had notice of Claimant's injuries, and we remand that case for further proceedings consistent with this Summary Disposition Order.
NOTES
[1] Claimant testified during trial that the correct date of this incident was February 21, 1999. However, many of the documents in the record, including the LIRAB's decisions, refer to February 20, 1999, as the date of the incident, and to avoid confusion, we will do the same.
[2] Earlier versions of the statute used the term "masseur" instead of "massage therapist." HRS §§ 386-1 (Supp. 2000).
[3] HRS §§ 386-81 also contains certain exceptions to this notice requirement.